IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| COMPUCOM INTERMEDIATE HOLDINGS, INC. and COMPUCOM CANADA CO., <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA, <br><br> Defendant. | CASE NO.: 4:20-cv-197 <br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF FOR BREACH OF CONTRACT, AND ATTORNEYS' FEES**

CompuCom Intermediate Holdings, Inc. ("CIH") and CompuCom Canada Co. ("CompuCom Canada") (collectively "CompuCom") file this Complaint for Breach of Contract, for Attorneys' Fees and for Declaratory Relief against National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), alleging as follows:

1.  This Complaint arises out of National Union's failure to honor its contractual duty to reimburse CompuCom for losses under an insurance policy sold by National Union, in connection with litigation brought against CompuCom Canada by its former employee, Claudio Digirolamo (hereinafter "*Digirolamo*" or

the "*Digirolamo* Suit"). CompuCom brings claims against National Union for breach of contract, for attorneys' fees, and for declarations regarding National Union's obligations under the insurance policy.

## The Parties, Jurisdiction and Venue

2.  CIH is a Delaware corporation with its principal place of business in Fort Mill, South Carolina. CIH, through itself and its subsidiaries, provides information technology ("IT") managed services, infrastructure solutions, consulting and products for enterprise, midsize and small businesses. CIH is the named insured under the National Union insurance policy at issue in this case, which it received at its then-principal business address of 8383 Dominion Parkway, Plano, Texas 75024, as reflected by the face of the insurance policy, and where it maintained this principal place of business through and including the underlying events described in the *Digirolamo* Suit.

3.  CompuCom Canada is a Canadian corporation organized under the laws of the province of Nova Scotia, Canada with its principal place of business in Fort Mill, South Carolina. CompuCom Canada is a subsidiary of CIH, and it provides the IT services described above, in Canada. CompuCom Canada employed Claudio Digirolamo, and was sued by Mr. Digirolamo in the underlying employment lawsuit giving rise to the instant suit. Like CIH, CompuCom Canada's principal place of business during the times identified in the *Digirolamo*

Suit was 8383 Dominion Parkway, Plano, Texas.  CompuCom Canada is an insured under the National Union insurance policy at issue in this case, by virtue of its relationship to CIH and the policy terms.

4. Defendant National Union is a Pennsylvania corporation with its principal place of business in New York City, New York.  National Union is transacting business in the State of Texas and in the Eastern District of Texas, in particular.  As described below, National Union sold a "Private Edge Plus" insurance policy to CIH and its subsidiaries including CompuCom Canada, in the Eastern District of Texas.  National Union may be served with this Complaint through its registered agent for service of process, Corporation Service Company, and other means.

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of jurisdiction between plaintiffs and National Union, and the amount in controversy exceeds $75,000.

6. National Union is subject to personal jurisdiction in Texas because it regularly transacts business in Texas, including contracting to provide the insurance policy at issue in this suit.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391.

## The *Digirolamo* Suit

8. On or about October 6, 2017, Claudio Digirolamo filed a lawsuit against CompuCom Canada in the Ontario Superior Court of Justice, including a "Statement of Claim." Attached hereto as Exhibit A is a copy of Mr. Digirolamo's Statement of Claim.

9. On or about January 17, 2019, CompuCom Canada and Mr. Digirolamo entered into a Settlement Agreement, which included a payment to Mr. Digirolamo in exchange for dismissal of his claims. This Settlement Agreement includes a confidentiality provision, and will be submitted to the Court as necessary pursuant to a Protective Order or Confidentiality Agreement. As CompuCom's insurer, National Union received a copy of the Settlement Agreement as well as as other submissions in the *Digirolamo* Suit.

10. CompuCom paid Mr. Digirolamo under the terms of the Settlement Agreement described above.

## The National Union Insurance Policy

11. National Union sold to CIH a Private Edge Plus Insurance Policy, Number 01-422-48-18, covering the period May 9, 2017 to May 9, 2018 (the "National Union Policy" or the "Policy"). A copy of the National Union Policy is attached hereto as Exhibit B.

12. The National Union Policy is a "reimbursement" policy which provides coverage for defense costs and settlements paid by the insured in response to a covered, third party "Claim" made against the insured. The "Employment Practices Coverage Section" of the Policy at issue here has limits of $10 million, in which defense costs erode limits, subject to a $250,000 deductible. The Policy provides coverage on a "claims made" basis, meaning the Policy is triggered when the underlying claim is first made.

13. As a "Subsidiary" of CIH, and by virtue of the definitions contained in the Policy, CompuCom Canada is an "Insured" under the Policy.

14. The National Union Policy contains a section entitled "Employment Practices Liability Insurance ("EPL Coverage Section")." Ex. B, pp. 34-42. The EPL Coverage Section is modified in part by Endorsement No. 25, titled "Coverage Amendatory Endorsement (GTC, D&O, EPL, FLI and Crime Coverage Sections)." Ex. B, pp. 135-203 (Endorsement No. 25). In particular, Endorsement No. 25 contains an "Employment Edge Enhancements" section that modifies the insurance coverage grant for the Employment Practices Liability Insurance contained in the Policy. Ex. B, pp. 160-72 (Endorsement No. 25, § III).[1]

---

[1] The Private Edge Plus Insurance Policy is a "packaged policy," meaning that it contains numerous coverage sections in addition to the Employment Practices Coverage Section (as modified by Endorsements) that are described herein. Depending on the positions taken by National Union in this litigation, it is possible

15. Endorsement No. 25 provides that "This **EPL Coverage Section** shall pay the **Loss** of each and every **Insured** arising from a **Claim** made against such **Insured** for any **Employment Practices Violation**." Ex. B, p. 160 (Endorsement No. 25, § III ¶ 1). (Bolded terms herein are also bold in the Policy, and reflect defined terms.)

16. "Loss" is defined in the Employment Practices Liability Coverage section of the Policy as follows:

> **"Loss"** means damages (including back pay and front pay), judgments, settlements, pre- and post-judgment interest and **Defense Costs**; provided, however, **Loss** shall not include: (i) civil or criminal fines or penalties imposed by law; (ii) taxes; (iii) any amounts for which an **Insured** is not financially liable or which are without legal recourse to an **Insured**; (iv) employment-related benefits, stock options, perquisites, deferred compensation or any other type of compensation other than salary, wages or bonus compensation; (v) any liability or costs incurred by any **Insured** to modify any building or property in order to make said building or property more accessible or accommodating to any disabled person, or any liability or costs incurred in connection with any educational, sensitivity or other corporate program, policy or seminar; (vi) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed. **Defense Costs** shall be provided for items specifically excluded from **Loss** pursuant to subparagraphs (m)(i) through (m)(vi) above of this Definition, subject to the other terms, conditions and exclusions of this policy.

Ex. B, p. 36 (EPL Coverage Section ¶ 2(m)).

---

the *Digirolamo* Suit could also be covered under one or more of those other coverage sections. CompuCom reserves the right to assert such coverage.

17. The definition of Loss is amended in the Policy by Endorsement No. 25, as follows:

> **"Loss"** shall also include attorney fees awarded to a prevailing plaintiff's counsel pursuant to a covered judgment against an **Insured** or which the **Insurer** has agreed to pay as part of a covered settlement of a **Claim** against an **Insured**.

Ex. B, p. 164 (Endorsement No. 25, § III ¶ 6).

18. "Claim" is defined in Endorsement No. 25 of the Policy as, among other things, a "written demand for monetary, non-monetary or injunctive relief…." Ex. B, p. 161 (Endorsement No. 25, § III ¶ 2). The *Digirolamo* Suit qualifies as a "Claim" under the Policy.

19. "Employment Practices Violation" is defined in Endorsement No. 25 of the Policy to include any actual or alleged:

> (i)  wrongful dismissal, discharge or termination (either actual or constructive) of employment, including breach of an implied contract;
>
> (ii)  harassment (including workplace bullying, sexual harassment whether "quid pro quo", hostile work environment or otherwise, including "same-sex" sexual harassment);
>
> (iii)  discrimination (including, but not limited to, discrimination based upon age, gender, gender identity or expression, race, color, national origin, religion, sexual orientation or preference, genetic information, pregnancy, military status or disability);
>
> (iv)  **Retaliation**;
>
> (v)  employment-related misrepresentation(s) to an **Employee** of any **Company** or applicant for employment with any **Company** or any **Outside Entity**;

(vi)   employment-related libel, slander, humiliation, defamation or invasion of privacy;

(vii)  false arrest or false imprisonment;

(viii) wrongful failure to employ or promote;

(ix)   wrongful deprivation of career opportunity, wrongful demotion or negligent **Employee** evaluation, including the giving of negative or defamatory statements in connection with an employee reference;

(x)    wrongful discipline;

(xi)   failure to grant tenure; or

(xii)  with respect to any of the foregoing items (i) through (xii) of this definition:  negligent hiring, retention, training or supervision, infliction of emotional distress or mental anguish, failure to provide or enforce adequate or consistent corporate policies and procedures, or violation of an individual's civil rights;

but only if the **Employment Practices Violation** relates to an **Employee** of or an applicant for employment with a **Company** or an **Outside Entity**, whether committed directly, indirectly, intentionally or unintentionally.

*See* Ex. B, pp. 162-63 (Endorsement No. 25, § III ¶ 2).

20. As noted above, the definition of "Loss" – the amounts to be reimbursed by National Union for a covered "Claim" – includes "Defense Costs." Because the *Digirolamo* Suit alleged a covered "Claim," National Union was required to advance Defense Costs to CompuCom. Ex. B, p. 168 (Endorsement No. 25, § III ¶ 14).

21. Moreover, under the definition of "Loss" above, National Union was required to reimburse CompuCom for the settlement payment made in the *Digirolamo* Suit because, among other things, it constituted a "settlement" arising

from a "Claim" for an "Employment Practices Violation." Ex. B, pp. 36 (EPL Coverage Section ¶ 2(m)) and 160 (Endorsement No. 25, § III ¶ 1).

22. The Policy includes various "exclusions" which, if applicable, could preclude coverage under the Policy. For example, in correspondence identified below, National Union at various points purported to rely on Endorsement No. 2 titled "FLSA and Related Exclusions Amended," and Endorsement No. 25, paragraph 12 titled "Contract Exclusion Amended – Carveback for Executives," to deny coverage. *See* Ex. B, pp. 90-91 (Endorsement No. 2) and 167-68 (Endorsement No. 25, § III ¶ 12). However, none of these exclusions applies to bar coverage for the *Digirolamo* Suit.

## CompuCom's Claim Under the Policy

23. Both CIH and CompuCom Canada qualify as "Insureds" under the Policy.

24. Moreover, the *Digirolamo* Suit qualifies as a "Claim" first made under the Policy during the Policy's term of May 9, 2017 to May 9, 2018, because the suit was filed, and CompuCom provided notice of it to National Union, during that period.

25. The *Digirolamo* Suit was a covered "Claim" because it alleged an "Employment Practices Violation" as defined by the National Union Policy.[2] National Union essentially admitted this when, on October 9, 2017, it acknowledged a duty to reimburse CompuCom Canada's defense costs, subject to reservation of rights.  In doing so, National Union correctly recognized that the Policy provides coverage for, among other things, employment-related misrepresentations; wrongful dismissal, discharge or termination; retaliation (a defined term in the Policy); failure to promote; employment-related libel, slander, humiliation; discipline; deprivation of career opportunity; and failure to enforce consistent corporate policies.  Any one of these coverage provisions, and others, applies to the *Digirolamo* Suit.

26. Because the defense costs and settlement paid by CompuCom in the *Digirolamo* Suit constitute "Loss" arising from a covered "Claim," National Union was required to reimburse them.  As discussed below, National Union has reimbursed some, but not all, of CompuCom's defense costs for the *Digirolamo* Suit, and it has reimbursed no amount of the settlement payment.

27. Additionally, none of the exclusions or conditions contained in the National Union Policy preclude coverage for the *Digirolamo* Suit.  For example,

---

[2]  As noted above, depending on the positions taken by National Union, it is possible that *Digirolamo* could constitute a covered claim under other provisions of the National Union Policy.

National Union argued that Endorsement No. 2 to the Policy, titled "FLSA and Related Exclusions Amended," applied to bar coverage for *Digirolamo*. *See* Ex. B, pp. 90-91 (Endorsement No. 2). However, this exclusion does not apply because, among other things, the *Digirolamo* Suit was not brought under any of the enumerated employment statutes therein, nor any "similar" statutes; nor do any of the other terms of the exclusion apply. Moreover, Endorsement No. 25 to the Policy, paragraph 12, titled "Contract Exclusion Amended – Carveback for Executives" (*see* Ex. B, pp. 167-68 (Endorsement No. 25, § III ¶ 12), previously cited by National Union to limit coverage, likewise does not apply because Mr. Digirolamo was not making claims based on an express written contract.

## The Instant Coverage Dispute

28. CompuCom provided timely notice of the *Digirolamo* Suit to National Union under the Policy. Thereafter, CompuCom and National Union repeatedly communicated with one another concerning coverage issues, in writing and otherwise. In those letters and in other communications, CompuCom demanded that National Union pay CompuCom for the defense fees and costs it was incurring in the *Digirolamo* Suit, and reimburse CompuCom for the *Digirolamo* settlement.

29. After receiving notice of the *Digirolamo* Suit, National Union issued its first coverage opinion on or about October 9, 2017. In it, National Union agreed an Employment Practices Violation was alleged, and agreed to defend

CompuCom subject to a reservation of rights. Attached hereto as Exhibit C is a true and correct copy of this letter. However, on or about January 3, 2019, National Union issued a "supplemental" coverage position in which it stated it would only afford CompuCom "limited coverage." Attached hereto as Exhibit D is a true and correct copy of this letter.

30. By letter dated January 16, 2019, CompuCom contested National Union's positions, and explained why coverage should attach without reservation. Attached hereto as Exhibit E is a true and correct copy of this letter. In response, and having been previously informed about the settlement, on January 22, 2019, National Union generally maintained its position that CompuCom was only entitled to "limited coverage" for the *Digirolamo* Suit. Attached hereto as Exhibit F is a true and correct copy of this letter.

31. On or about January 31, 2019, following execution of the Settlement Agreement, CompuCom again wrote to National Union, requesting reimbursement for the settlement payment, and detailing the reasons why. On March 22, 2019, National Union responded, reiterating its position that the Policy did not cover the settlement payment, offering only to contribute a very small portion – less than ten percent – of the payment.

32. With respect to defense costs, National Union has reimbursed CompuCom for only a portion of the defense costs which CompuCom has paid,

and to which CompuCom is entitled.  In sum, National Union does not dispute CompuCom's defense costs are covered, but rather has taken deductions from the *amount* to be reimbursed, citing among other things "staffing" issues, "administrative" inefficiencies and vague time entries.  In total, National Union has refused to reimburse in excess of $150,000 in defense costs submitted by CompuCom.

33.     Thus, National Union has failed to reimburse CompuCom for all "Loss" arising from the *Digirolamo* Suit, consisting of a substantial portion of CompuCom's defense fees and costs, and the *Digirolamo* settlement payment.  National Union's failures to reimburse CompuCom these amounts constitute material breaches of the Policy.

34.     In light of National Union's positions, including its failure to reimburse CompuCom for the settlement payment, and only a portion of the defense costs, CompuCom invoked its right to non-binding mediation under paragraph 14 of the General Terms and Conditions of the Policy.  *See* Ex. B, pp. 18-19.  The mediation concluded without a settlement.  Thus, CompuCom has discharged its obligations under the Alternative Dispute Resolution provisions in the Policy.

## COUNT I

## (Breach of Contract – Failure to Reimburse All Defense Costs)

35. CompuCom incorporates herein by reference paragraphs 1 through 34 of this Complaint as fully set forth herein.

36. CompuCom has complied with all applicable conditions precedent contained in the Policy.

37. National Union had a duty to reimburse CompuCom for CompuCom's defense fees and costs under the Policy, which qualify as "Defense Costs" and "Loss" under the Policy. *Digirolamo* alleged an "Employment Practices Violation," as defined by the Policy, and no exclusion applied to preclude coverage.

38. National Union has materially breached its obligations under the Policy regarding its duty to reimburse CompuCom for all defense fees and costs CompuCom incurred in response to *Digirolamo*.

39. As a direct and proximate result of National Union's breach, National Union has deprived CompuCom of the benefit of the insurance policy for which CompuCom has paid substantial premiums, and has caused CompuCom to incur significant legal fees and expenses.

40. CompuCom has been damaged in an amount to be proven at trial, consisting of defense fees and costs incurred and paid by CompuCom in connection with the *Digirolamo* Suit, plus interest and appropriate damages.

## COUNT II

### (Breach of Contract – Failure to Reimburse Settlement)

41. CompuCom incorporates herein by reference paragraphs 1 through 40 of this Complaint as fully set forth herein.

42. CompuCom has complied with all applicable conditions precedent contained in the Policy.

43. National Union had a duty to reimburse CompuCom under the Policy for the settlement payment CompuCom made in response to the *Digirolamo* Suit, which qualifies as "Loss" under the Policy. *Digirolamo* alleged an "Employment Practices Violation," as defined by the Policy, and no exclusion applied to preclude coverage.

44. By failing to reimburse CompuCom for the settlement, National Union has materially breached its obligations under the Policy.

45. As a direct and proximate result of National Union's breach, National Union has deprived CompuCom of the benefit of the insurance policy for which CompuCom paid substantial premiums, and has caused CompuCom to incur significant legal fees and expenses.

46. CompuCom has been damaged in an amount to be proven at trial, which consists of the amount of the settlement payment CompuCom made for the *Digirolamo* Suit, plus interest and other appropriate damages.

## COUNT III

### (Attorneys' Fees and Costs under Chapter 38 of the Texas Civil Practice & Remedies Code)

47. CompuCom incorporates herein by reference paragraphs 1 through 46 of this Complaint as fully set forth herein.

48. As a direct and proximate result of the actions of National Union as described herein, CompuCom has been required to engage the undersigned attorneys to bring these claims. CompuCom has incurred attorneys' fees and costs in bringing these claims.

49. National Union is liable to CompuCom for CompuCom's attorneys' fees and expenses (including conditional awards of attorneys' fees on appeal) under applicable Texas law, including without limitation Texas Civil Practice & Remedies Code § 38.001.

50. CompuCom is entitled to recover, and hereby seeks, its reasonable attorneys' fees and costs from National Union in pursuing these claims.

## COUNT IV

### (Declaratory Judgment on National Union's Duty to Reimburse CompuCom's Defense Costs and Indemnify CompuCom)

51. CompuCom incorporates herein by reference paragraphs 1 through 50 of this Complaint as fully set forth herein.

52. National Union owed CompuCom a duty to reimburse CompuCom in full for CompuCom's defense fees and costs, and payment of the settlement, in connection with the *Digirolamo* Suit.  National Union's failure to pay any of these amounts constitutes a material breach of its duties and obligations under the Policy.

53. In light of the above, there exists an "actual controversy" between the parties appropriate for the entry of a declaratory judgment pursuant to 28 U.S.C. § 2201, in CompuCom's favor.

54. CompuCom is entitled to a declaration that National Union owed CompuCom a duty to reimburse CompuCom in full for its defense fees and costs, and payment of the settlement, in connection with *Digirolamo*; that National Union breached those duties; and that National Union owes CompuCom amounts to be determined by this Court.

## PRAYER FOR RELIEF

WHEREFORE, CompuCom respectfully seeks the following:

    A. That the Court enter judgment in favor of CompuCom on all causes of action;

B. On all causes of action, an award of damages in CompuCom's favor in an amount to be determined at trial;

C. On CompuCom's Third Cause of Action, damages consisting of CompuCom's attorneys' fees and costs in pursuing its breach of contract remedies herein for National Union's breach of the National Union policy, including without limitation the fees and costs spent in pursuing the instant litigation;

D. On CompuCom's Fourth Cause of Action, a declaration that (a) National Union owed CompuCom a duty to reimburse CompuCom in full for its defense fees and costs, and payment of the settlement, in connection with *Digirolamo*; (b) National Union breached those duties; and (c) National Union owes CompuCom amounts to be determined by this Court;

E. On all causes of action, an award of CompuCom's reasonable attorneys' fees, pre-judgment and post-judgment interest, costs and the expenses of this action;

F. On all causes of action, for such other, further and different relief as this Court deems just and proper; and

G. That this case be tried by a jury.

Respectfully submitted,

/s/ Kirk T. Florence
Kirk T. Florence
State Bar No. 07160900

KILPATRICK TOWNSEND &
STOCKTON LLP
2001 Ross Avenue, Suite 4400
Dallas, Texas 75201
Telephone:  (214) 922-7100
Telecopier:  (214) 922-7101
Email:  kflorence@kilpatricktownsend.com

Attorneys for CompuCom Intermediate
Holdings, Inc. and CompuCom Canada Co.

Of Counsel (*Pro hac vice* to be requested):

Brent W. Brougher, Georgia Bar No. 086373
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street NE, Suite 2800
Atlanta, GA  30309
Telephone:  (404) 815-6500
Telecopier:  (404) 815-6555
Email:  bbrougher@kilpatricktownsend.com

## REQUEST FOR TRIAL BY JURY

CompuCom hereby requests that this case be tried to a jury.

                                        Respectfully submitted,

                                        /s/ Kirk T. Florence
                                        Kirk T. Florence
                                        State Bar No. 07160900

                                        KILPATRICK TOWNSEND &
                                        STOCKTON LLP

US2008 16449949 5